**Naomi Sheffield, OSB No. 170601**
Chief Deputy City Attorney
Email: naomi.sheffield@portlandoregon.gov
**Trung D. Tu, OSB No. 004100**
Senior Deputy City Attorney
Email: trung.tu@portlandoregon.gov
**PORTLAND CITY ATTORNEY'S OFFICE**
1221 SW Fourth Ave., Room 430
Portland, Oregon 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089

*Of Attorneys for Defendant City of Portland,*
*Charles Lovell III, Jennifer Hertzler, Shaye Samora,*
*Jacob Jensen, Robert Quick, Christopher Lindsey,*
*and Rachel Baer*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

|  |  |
|---|---|
| **KAREN CHIRRE,** | Case No. 3:24-CV-01334-AR |
| Plaintiff, | |
| v. | **DEFENDANTS CITY OF PORTLAND, CHARLES LOVELL, JENNIFER HERTZLER, SHAYE SAMORA, JACOB JENSEN, ROBERT QUICK, CHRIS LINDSEY, AND RACHEL BAER'S, MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT** |
| **CITY OF PORTLAND, CHARLES LOVELL III, MICHAEL FROME, JOSEPH SANTOS, JENNIFER HERTZLER, SHAYE SAMORA, JACOB JENSON, ROBERT QUICK, CHRIS LINDSAY, RACHEL BAER** | |
| Defendants. | (Oral Argument Requested) |

# TABLE OF CONTENTS

CERTIFICATE PURSUANT TO LOCAL RULE 7-1 ..............................................................1

REQUEST FOR ORAL ARGUMENT ................................................................................1

MOTION TO DISMISS ...................................................................................................1

MOTION TO TAKE JUDICIAL NOTICE ...........................................................................1

MEMORANDUM OF LAW ..............................................................................................2

I.     Introduction ...................................................................................................2

II.    Factual Allegations in Plaintiff's TAC .............................................................3

III.   Legal Standard ...............................................................................................9

IV.    Argument ......................................................................................................10

       A.   First Cause of Action: Malicious Prosecution (4th Amendment) – The factual allegations in the TAC do not support a conclusion that City Defendants initiated Plaintiff's prosecution or that the prosecution lacked probable cause..................10

            1.   City Defendants are entitled to absolute judicial immunity with respect to a claim that arise from testimony to the grand jury. ................................11

            2.   Plaintiff has not alleged that her criminal prosecution was initiated at the insistence of any City employee. ................................................................13

            3.   Plaintiff has not alleged facts supporting a conclusion that her prosecution was initiated without probable cause. .......................................................15

       B.   Second Cause of Action: Fabrication of Evidence (14th Amendment) – Plaintiff has failed to allege any evidence fabricated by the City Defendants. ..................16

       C.   Third Cause of Action: First Amendment Retaliation – The TAC does not include factual allegations from which a jury could conclude that any City Defendants were aware of Plaintiff's alleged First Amendment activity. ...............................20

       D.   Fourth Cause of Action: Procedural Due Process (14th Amendment) – The factual allegations in the TAC demonstrate that Plaintiff received both notice and an opportunity to be heard prior to termination. ..........................................................21

       E.   Fifth Cause of Action: Failure to Intercede – Plaintiff has failed to allege that any City Defendant had a reasonable opportunity to intercede in the allegedly unconstitutional acts of the co-defendants. ..........................................................24

       F.   Defendants Lovell, Hertzler, Samora, Jensen, Quick, Lindsay, and Baer are entitled to qualified immunity for Plaintiff's First through Fifth Causes of Action. ....................................................................................................................27

       G.   Sixth Cause of Action: Monell - Plaintiff has failed to adequately allege a Monell claim against the City. ..................................................................................29

       H.   Seventh Cause of Action: Wrongful Discharge – Plaintiff did not provide timely tort claim notice and otherwise fails to state a claim for wrongful discharge. ......31

            1.   Plaintiff failed to provide timely tort claim notice to the City..................31

            2.   The TAC fails to allege sufficient facts to state a wrongful discharge claim.................................................................................................................33

V.     Conclusion ...................................................................................................35

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alexander Torres v. Los Angeles Sheriff's Dept. et al.*,
2024 WL 4720808 (C.D. Cal. Aug. 14, 2024) ........................................................... 16

*Alvarez v. Sitts*,
2020 WL 5027131 (D. Or. Aug. 25, 2020) .............................................................. 19

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,
824 F.3d 858 (9th Cir. 2016) ................................................................................. 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................... 9, 10

*Awabdy v. City of Adelanto*,
368 F.3d 1062 (9th Cir. 2004) ...................................................................... 11, 13, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................. 9

*Blankenhorn v. City of Orange*,
485 F.3d 463 (9th Cir. 2007) ................................................................................. 13

*Bliss v. Adewusi*,
2023 WL 6961979 (D. Or. Oct. 20, 2023) ................................................................ 11

*Bradford v. Scherschligt*,
803 F.3d 382 (9th Cir. 2015) ........................................................................... 16, 17

*Briscoe v. LaHue*,
460 U.S. 325 (1983) ..................................................................................... 11, 12

*Buckley v. Wagstaffe*,
2022 WL 2442733 (N.D. Cal. Mar. 8, 2022) ............................................................ 14

*City and Cnty. of San Francisco v. Sheehan*,
575 U.S. 600 (2015) ........................................................................................... 27

*City of Canton v. Harris*,
489 U.S. 378 (1989) ........................................................................................... 29

*City of Los Angeles v. Heller*,
475 U.S. 796 (1986) ........................................................................................... 30

*Clements v. Airport Auth. of Washoe Cnty.*,
69 F.3d 321 (9th Cir. 1995) .................................................................................. 22

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) ........................................................................................... 22

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

*Collins v. City of Harker Heights*,
  503 U.S. 115 (1992) ........................................................................... 22

*Cunningham v. Gates*,
  229 F.3d 1271 (9th Cir. 2000) ........................................................ 24

*Davis v. Con-Way Freight Inc.*,
  139 F. Supp. 3d 1224 (D. Or. 2015) ............................................... 33

*DeArmitt v. Clackamas Cnty.*,
  2019 WL 1497042 (D. Or. Jan. 18, 2019) ...................................... 26

*Deveraux v. Abbey*,
  263 F.3d 1070 (9th Cir. 2001) ................................................... 17, 18

*District of Columbia v. Wesby*,
  583 U.S. 48 (2018) ........................................................................... 27

*East v. City of Richmond*,
  2010 WL 4580112 (N.D. Ca. Nov. 3, 2010) .................................. 14

*Estate of Lopez by and through Lopez v. Gelhaus*,
  871 F.3d 998 (9th Cir. 2017) .......................................................... 27

*Faretta v. California*,
  422 U.S. 806 (1975) ......................................................................... 35

*First Citizens Bank & Tr. Co. v. HSBC Holdings*,
  2024 WL 115933 (N.D. Cal. Jan. 10, 2024) ................................... 10

*Freeman v. City of Santa Ana*,
  68 F.3d 1180 (9th Cir.1995) ............................................................ 11

*Gauvin v. Trombatore, et al.*,
  682 F. Supp. 1067 (N.D. Cal. 1988) ............................................... 10

*Gibson v. City of Portland*,
  2024 WL 811242 (D. Or. Feb. 26, 2024) .................................. 10, 12

*Gilton v. City & Cnty. of San Francisco*,
  2023 WL 5600082 (N.D. Cal. Aug. 29, 2023) ............................ 19, 24

*Hernandez v. Jefferson Cnty. Sheriff's Off.*,
  2021 WL 7542408 (D. Or. Nov. 16, 2021) ..................................... 15

*Hunter v. Cnty. of Sacramento*,
  652 F.3d 1225 (9th Cir. 2011) ........................................................ 29

*Kaady v. Shiferaw*,
  2023 WL 4163094 (D. Or. May 11, 2023) ..................................... 17

*Lacey v. Maricopa Cnty.*,
  693 F.3d 896 (9th Cir. 2012) .......................................................... 21

Page iii –    TABLE OF AUTHORITIES

*Lal v. California,*
    746 F.3d 1112 (9th Cir. 2014) ............................................................ 27

*Lalack v. Oregon,*
    2013 WL 819789 (D. Or. Mar. 5, 2013) ............................................ 23

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) .............................................................. 2

*Libby v. City of Medford,*
    2017 WL 2219995 (D. Or. Mar. 17, 2017) ........................................ 15

*Lockett v. Cnty. of L.A.,*
    977 F.3d 737 (9th Cir. 2020) ............................................................ 30

*Marble v. Missoula Cnty.,*
    2020 WL 6043858 (D. Mont. Oct. 13, 2020) .................................... 25

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ........................................................................... 22

*Merrill v. Lane Fire Auth.,*
    2022 WL 3448806 (D. Or. July 19, 2022) ........................................ 22

*Mike v. City of Phoenix,*
    2016 WL 5339693 (D. Ariz. Jan. 8, 2016) ................................... 16, 25

*Monell v. Dep't of Soc. Servs. of City of New York,*
    436 U.S. 658 (1978) ........................................................................... 29

*Morrisey v. Brewer,*
    408 U.S. 471 (1972) ........................................................................... 22

*Nisley v. Rosenblum,*
    2022 WL 1630011 (D. Or. May 23, 2022) ........................................ 30

*NuCal Foods, Inc. v. Quality Egg LLC,*
    887 F. Supp. 2d 977 (E.D. Cal. 2012) ................................................. 2

*O. L. v. Jara,*
    2022 WL 1499656 (9th Cir. May 12, 2022) ...................................... 30

*Pearce v. City of Portland,*
    2023 WL 315913 (D. Or. Jan. 18, 2023) ........................................... 32

*Portman v. Cnty. of Santa Clara,*
    995 F.2d 898 (9th Cir. 1993) ............................................................ 22

*Pratt v. Phoenix Home Life. Mut. Ins. Co.,*
    285 B.R. 3 (D. Or. 2001) ................................................................... 35

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

*Price v. Sery*,
    513 F.3d 962 (9th Cir. 2008) .................................................................................. 30

*Riofrio v. Del Monte Fresh Produce N.A., Inc.*,
    2010 WL 4536794 (D. Or. Nov. 2, 2010) ................................................................ 34

*Romero v. Kitsap Cnty.*,
    931 F.2d 624 (9th Cir. 1991) .................................................................................. 27

*Rubalcava v. City of San Jose*,
    2021 WL 2987164 (N.D. Cal. July 15, 2021) .......................................................... 24

*S.B. v. City of San Diego*,
    864 F.3d 1010 (9th Cir. 2017) ................................................................................ 28

*Segura v. Milleri*,
    2022 WL 1165728 (D. Or. Apr. 20, 2022) .............................................................. 24

*Senn v. Multnomah Cnty.*,
    527 F. Supp. 3d 1255 (D. Or. 2021) ....................................................................... 21

*Shafer v. Cnty. of Santa Barbara*,
    868 F.3d 1110 (9th Cir. 2017) ................................................................................ 27

*Sheppard v. David Evans and Assoc.*,
    694 F.3d 1045 (9th Cir. 2012) ................................................................................ 33

*Smiddy v. Varney*,
    665 F.2d 261 (9th Cir. 1981) .................................................................................. 13

*Souliotes v. City of Modesto*,
    2016 WL 3549266 (E.D. Cal. June 29, 2016) ......................................................... 19

*Spencer v. Peters*,
    857 F.3d 789 (9th Cir. 2017) .................................................................................. 16

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ................................................................................ 25

*Taylor v. Yee*,
    780 F.3d 928 (9th Cir. 2015) .................................................................................... 9

*Weaver v. Netflix*,
    2011 WL 4625697 (D. Or. Aug. 16, 2011) .............................................................. 34

*Westwood v. City of Hermiston*,
    787 F. Supp. 2d 1174 (D. Or. 2011) ....................................................................... 13

*White v. Pauly*,
    580 U.S. 73 (2017) ................................................................................................. 27

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

**State Cases**

*Blandino v. Fischel*,
179 Or. App. 185 (2002) ................................................................. 11

*Brown v. Board of Educ.*,
207 Or. App. 163 (2006) ................................................................. 34

*Brown v. Transcon Lines*,
284 Or. 594 (1978) ......................................................................... 34

*Cross v. Eastlund*,
103 Or. App. 138 (1990) ................................................................. 34

*Curzi v. Oregon State Lottery*,
286 Or. App. 254 (2017) ................................................................. 32

*Gable v. State ex rel. State Wildlife Comm'n.*,
23 Or. App. 670 (1975) ................................................................... 31

*Georgeson v. State*,
75 Or. App. 213 (1985) ................................................................... 32

*Gigler v. Klamath Falls*,
21 Or. App. 753 (1975) ................................................................... 15

*Goodlette v. LTM, Inc.*,
128 Or. App. 62 (1994) ................................................................... 34

*Handam v. Wilsonville Holiday Partners, LLC*,
225 Or. App. 442 (2009) ................................................................. 34

*Hernandez-Nolt v. Washington Cnty.*,
259 Or. App. 630 (2013) ................................................................. 32

*Rauda v. Oregon Roses, Inc.*,
147 Or. App. 106 (1997) ................................................................. 34

*Rogers v. Hill*,
281 Or. 491 (1978) ......................................................................... 13

*Sharma v. Providence Health & Services-Oregon*,
289 Or. App. 644 (2018) ................................................................. 33

*Shoemaker v. Selnes*,
220 Or. 573 (1960) ......................................................................... 15

*Tyree v. Tyree*,
116 Or. App. 317 (1992) ................................................................. 32

*Urban Renewal Agency of Coos Bay v. Lackey*,
275 Or. 35 (1976) ........................................................................... 32

*Vergara v. Patel*,
305 Or. App. 288 (2020) ................................................................. 33

Page vi –   TABLE OF AUTHORITIES

*Waldner v. Dow*,
   128 Or. App. 197 (1994)................................................................................... 13

**State Statutes**

ORS 8.660 .......................................................................................................... 14

ORS 30.265 ........................................................................................................ 31

ORS 30.275 ........................................................................................................ 31

ORS 132.330 ...................................................................................................... 14

**Federal Rules**

Fed. R. Civ. P. 8 .............................................................................................. 9, 10

Fed. R. Civ. P. 12 ............................................................................................... 1

Fed. R. Evid. 201 ............................................................................................... 2

**Other Authorities**

LR 7 ..................................................................................................................... 1

Page  vii  –  TABLE OF AUTHORITIES

**CERTIFICATE PURSUANT TO LOCAL RULE 7-1**

Undersigned counsel for Defendants City of Portland, Charles Lovell III, Jennifer Hertzler, Shaye Samora, Jacob Jensen, Robert Quick, Chris Lindsey, and Rachel Baer (collectively, "City Defendants")[1] certifies that she and Robert Parker, counsel for Plaintiff, conferred January 13, 2025, and made good faith effort to resolve the issues in dispute raised herein but have been unable to do so.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Federal Rule of Civil Procedure 12(i) and LR 7-1(d)(2), the City requests oral argument on this Motion. The time estimated for oral argument is sixty (60) minutes.

**MOTION TO DISMISS**

The City Defendants hereby move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the entirety of Plaintiff's Third Amended Complaint ("TAC") (ECF 26) for failure to state a claim for the following reasons:

(1) Each of the Causes of Action fail to allege sufficient facts to state a claim upon which relief can be granted.

(2) The Seventh Cause of Action is barred because Plaintiff failed to provide timely tort claim notice to the City.

**MOTION TO TAKE JUDICIAL NOTICE**

The City Defendants ask that the Court take judicial notice of the grand jury indictment and warrant return of service in Multnomah County Circuit Court case number 23CR12574. (*See* Declaration of Naomi Sheffield, ("Sheffield Decl."), ¶¶ 2-3, Exs. 1-2). The Court may take judicial notice of facts that are not subject to reasonable dispute because they are "(1) generally

---

[1] This Motion to Dismiss is filed solely on behalf of the identified City Defendants. The TAC names Deputy Chief of Police Michael Frome and Sergeant Joseph Santos, who are both former City employees. However, service has not been completed on these other individually named defendants.

**Page  1 –    CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Additionally, "a court may take judicial notice of 'matters of public record'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). "Courts have consistently held that courts may take judicial notice of documents filed in other court proceedings." *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984 (E.D. Cal. 2012). The City Defendants, therefore, ask that the Court take judicial notice of Exhibit 1 and Exhibit 2.

**MEMORANDUM OF LAW**

**I.    Introduction**

Plaintiff filed this lawsuit against the City, asserting seven claims and seeking a total monetary award of $24.5 million. (*See* ECF 1-3). Plaintiff subsequently amended her complaint multiple times. (*See* ECF 11, 20, 26). Today, she continues to assert seven claims, albeit different claims, against the City and additional individual Portland Police Bureau ("PPB") officers. The Court should dismiss each of Plaintiff's claims because the factual allegations in the TAC are insufficient to state claims under each of Plaintiff's theories of liability. Plaintiff's allegations against the City Defendants are based on generalized and conclusory assertions regarding "fabricated" evidence and exculpatory evidence in connection with the criminal investigation of Plaintiff and Plaintiff's husband, Bruce Chirre. The TAC, however, fails to specifically identify any particular fabricated evidence or false statements made by a City Defendant nor does it point to any withheld exculpatory evidence. Plaintiff's allegations regarding the employment actions against her similarly rely on these conclusory statements. For these reasons, as further discussed herein, the Court should dismiss each of the Causes of Action in Plaintiff's TAC with prejudice.

///

///

///

**Page  2 –    CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

II.     **Factual Allegations in Plaintiff's TAC**[2]

Plaintiff joined PPB in 1994. (ECF 26, ¶ 17). Plaintiff was ultimately promoted to an Administrative Supervisor at PPB's East Precinct. (*Id.* at ¶ 18). Throughout Plaintiff's 28-year tenure at PPB, she had not received any demerits on her employment record and had experienced many successes. (*Id.* at ¶ 20).

In 2019-2020, Plaintiff, with her husband, Bruce Chirre, opened a convenience store (the "Superette") in Portland. (*Id.* ¶ 21). This convenience store, "attracted a large homeless population whose impact has resulted in high rates of theft property crimes and other criminal activity." (*Id.*). The Superette provided "such services as free dinners, holiday gatherings, karaoke nights, food distribution to their Goose Hollow homeless residents and facilitating events celebrating and appreciating the diversity of the Goose Hollow neighborhood." (*Id.*).

PPB and Portland Fire and Rescue were often called to the neighborhood surrounding the Superette. (*Id.* at ¶ 23). At the same time, PPB was under scrutiny for its handling of the high crime rates, by defund the police advocates, and in connection with the Department of Justice settlement. (*Id.*). Plaintiff's two jobs—working for PPB and running the Superette—"were diametrically opposed." (*Id.* at ¶ 24). Unidentified defendants allegedly "expressed . . . their negative judgments and opinions of how and why Plaintiff chose to live, work and associate with Goose Hollow's demographic." (*Id.* at ¶ 25).

In the early morning hours of April 5, 2021, Plaintiff and her husband received a call that a homeless individual was setting fires outside of the Superette. (*Id.* at ¶ 26). Plaintiff and her husband exited the Superette to address the fires. (*Id.* at ¶ 28). Mr. Chirre exited first. (*Id.*). Plaintiff responded to a fire set in a garbage bin and assisted neighbors with a fire at an adjacent building. (*Id.* at ¶ 29). Plaintiff did not see her husband during this time, but assumed that he too

---

[2] The City Defendants recite the facts as alleged by Plaintiff in the TAC. The City Defendants do not concede the accuracy of any factual allegations.

**Page 3 –     CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

was putting out fires. (*Id*.). When Plaintiff returned inside the Superette, she saw her husband and noticed that he "had a severely swollen hand and what appeared to be burns on his legs." (*Id*.). Plaintiff's husband refused to answer her questions about his whereabouts. (*Id*. at ¶ 30).

The following morning, Plaintiff "check[ed] in with PPB" and learned that they had set up operations across from the Superette. (*Id*. at ¶ 31). Plaintiff's husband went outside, while Plaintiff prepared for the day. (*Id*.). Approximately an hour after Plaintiff learned that PPB was set up outside, PPB detectives Hertzler and Beniga approached and separated Plaintiff from her husband. (*Id*. at ¶ 32). PPB detective Samora escorted Plaintiff to a PPB patrol car, drove her to a different parking lot, and placed Plaintiff in the back of another patrol car, where Detective Corona was sitting. (*Id*.). Plaintiff willingly entered the patrol car, and Detectives Corona and Samora asked Plaintiff questions, encouraging her to "just tell the truth." (*Id*. at ¶ 33). Detectives Corona and Samora did not affirmatively inform Plaintiff that she was not detained and was free to leave. (*Id*. at ¶ 34). Plaintiff gave an account of the evening to the detectives. (*Id*. at ¶¶ 35-37). The detectives attempted to get Plaintiff "to disclose what the detectives assumed she knew about her husband's whereabouts and his actions the night before." (*Id*. at ¶ 37). It became clear to Plaintiff that her husband was suspected of having murdered Jack Dekker, the arsonist. (*Id*. at ¶¶ 28, 38).

The same morning, PPB detectives obtained a search warrant of the Superette and confiscated certain items, including Plaintiff's PPB employment identification, cell phone, and clothing. (*Id*. at ¶ 39). Plaintiff learned that her husband had been transported to the PPB detective division at Central Precinct. (*Id*. at ¶ 40). Plaintiff went to Central Precinct to check on him. (*Id*.). The front desk clerk at Central Precinct, recognizing Plaintiff as a PPB employee, provided her with a visitor's badge and allowed her into the secure area. (*Id*. at ¶ 41). Plaintiff proceeded to the thirteenth floor to speak to Detective Santos and check on her husband. (*Id*.). The receptionist on the thirteenth floor waived Plaintiff into the office, and Plaintiff asked to

**Page 4 –    CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED**
**COMPLAINT**

speak with Detective Santos. (*Id*. at ¶ 42). Plaintiff, subsequently realized she should follow protocol and returned to the first floor to wait for Detective Santos. (*Id*.).

Detective Santos arrived on the first floor and berated Plaintiff, telling her she should stop lying and come clean about what she knew of her husband's actions. (*Id*. at ¶ 43). Plaintiff insisted she was telling the truth (*Id*. at ¶ 44). Detective Santos told her that if she continued to withhold what she knew, she would be fired and criminally charged. (*Id*.). Detective Santos escorted Plaintiff from Central Precinct and instructed her not to return. (*Id*. at ¶ 45). Plaintiff believed the detectives unit at PPB predetermined, without reasonable suspicion or probable cause, that Plaintiff was covering up for her husband's allegedly criminal conduct. (*Id*. at ¶ 46).

The following day, April 6, 2021, Plaintiff was placed on paid administrative leave by East Precinct Commander Erica Hurley and issued an internal affairs complaint. (*Id*. at ¶ 47). Plaintiff interpreted this as a separation from her employment after twenty-eight years, and believed that there was some other consideration at play. (*Id*. at ¶ 48).

Plaintiff was indicted on March 16, 2023, on three counts of Hindering Prosecution, one count of Tampering with Evidence, and one count of Official Misconduct. (*Id*. at ¶ 50). Plaintiff believes that "evidence that Defendant detectives presented at the [grand] jury was exaggerated, fallacious, and fabricated." (*Id*.).

Plaintiff was notified by Defendant Hertzler on March 17, 2023[3] that there was a warrant for her arrest. (*Id*. at ¶ 51). Plaintiff turned herself in and spent hours in jail. (*Id*.). While Plaintiff and her husband were being processed, PPB officers executed a search warrant on Plaintiff's properties, including the Superette, her home, and her vehicles. (*Id*. at ¶ 51 n.2). This separate search warrant resulted in the confiscation of her electronic devices, wallets, keys, and identifications. (*Id*.). This search warrant was procured by Detective Baer. (*Id*.). This search

---

[3] The TAC alleges March 17, 2024. However, based on context of the TAC and conferral with Plaintiff's counsel, the actual date appears to be March 17, 2023.

**Page 5 –    CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

warrant was issued "in response to a February 2023 armed robbery at the superette where a customer and friend of the homeless perpetrator contacted the police after the incident and reported that Karen's husband had and/or brandished a firearm." (*Id.*). Plaintiff alleges that it relied on "patently unfounded and false information," but does not identify what information was false or unfounded. (*Id.*). Plaintiff believes that this search warrant was actually related to the April 5, 2021, investigation. (*Id.*). PPB has taken no further action to date with respect to the February 2023 incident. (*Id.*).

Plaintiff alleges that PPB was required by custom to not conduct the criminal investigation into Plaintiff's conduct given her employment at PPB. (*Id.* at ¶¶ 53-54). On May 12, 2021, May 27, 2021, and February 24, 2022, results from DNA laboratory analysis showed that certain items had DNA from Plaintiff's husband and Mr. Dekker, but showed no indication of "soap, solvent, or bleach, which was a hypothesis that Defendants Hertzler, Santos, and Samora had otherwise relied upon in premising probable cause to support the criminal charges of tampering with evidence and hindering prosecution." (*Id.* at ¶¶ 55-56). Plaintiff alleges that Detective Santos was aware that she accessed the thirteenth floor Detective's Division by obtaining a visitor's badge, and not under the guise of exercising her employment duties. (*Id.* at ¶ 58). Plaintiff alleges that Commander Quick was informed that Plaintiff was going to Central Precinct and let Sergeant Santos know. (*Id.* at ¶ 58 n.3). Plaintiff alleges that Detective Santos was apprised that Plaintiff accessed the Detective Division to speak with detectives and inquire into her husband's well-being, and not to interfere with the investigation. (*Id.* at ¶ 59). Plaintiff similarly alleges that Detectives Hertzler and Samora, Captains Quick and Lindsey, and Commander Jensen "were well apprised of [Plaintiff's] exculpatory intention." (*Id.* at ¶ 60).

Plaintiff alleges that Detective Santos fabricated testimony that Plaintiff was aware of her husband's whereabouts on April 5, 2021 and witnessed her husband utilize a fire extinguisher to strike Jack Dekker, contributing to his death. (*Id.* at ¶ 61). Plaintiff alleges that DNA testing of

**Page 6 –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

the fire extinguisher dispelled this theory almost two years prior to her indictment. (*Id*. at ¶ 62). Plaintiff further alleges that Detective Santos and Hertzler fabricated evidence by stating that when she went to check on her husband, "she had aggressively pressured the front desk clerk and Detective Santos to allow her to speak with the assigned Detective, Defendant Hertzler." (*Id*. at ¶ 63).

Plaintiff was arraigned on March 20, 2023, and granted pre-trial release. (*Id*. at ¶ 52). On March 21, 2023,[4] PPB moved to revoke Plaintiff's CJIS security clearance. (*Id*. at ¶ 64). Plaintiff alleges that the "well-established practice" is to suspend the clearance until final disposition of the criminal charges. (*Id*.). Plaintiff was then informed on March 22, 2023[5], that she was being placed on unpaid administrative leave pending an Internal Affairs investigation. (*Id.* at ¶ 65).

Plaintiff alleges that Chief Lovell "determined and ratified [Plaintiff's] termination," which was communicated to her on May 10, 2023.[6] (*Id*. at ¶ 68). Plaintiff was informed that this was a non-disciplinary termination based on the revocation of her CJIS security clearance. (*Id*. at ¶ 69). Plaintiff asserts that other, unidentified personnel had faced similar criminal prosecutions and had their CJIS clearance suspended rather than terminated. (*Id*. at ¶ 70). Plaintiff alleges that this decision to terminate rather than suspend Plaintiff was done because it "communicated to the Mayor's office, Portland City Council and the Defund the Police movement that it had changed course by dispelling any inferences of internal Bureau corruption and self-dealing." (*Id*. at ¶ 72). Plaintiff further alleges that PPB threw her under the bus "for both her advocacy in the Goose Hollow neighborhood as well as to garner public favor in order to counteract what had been an ongoing campaign of incurring public derision and censure." (*Id*. at ¶ 73).

---

[4] Again, the TAC alleges March 21, 2024. However, the TAC states that it occurred one day after the arraignment, which would be March 21, 2023. (ECF 26, ¶ 64).
[5] Again, the TAC alleges March 22, 2024. However, based on context of the TAC and conferral with Plaintiff's counsel, the actual date appears to be March 22, 2023.
[6] Again, the TAC alleges May 10, 2024. However, based on context of the TAC and conferral with Plaintiff's counsel, the actual date appears to be May 10, 2023.

Page 7 –   **CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

The City revoked Plaintiff's medical insurance as of March 31, 2023,[7] but failed to inform her of this revocation. (*Id*. at ¶ 75). The end of Plaintiff's insurance impeded her ability to obtain therapeutic treatment. (*Id*. at ¶ 76).

Plaintiff alleges Chief Lovell and Deputy Chief Frome scheduled a termination hearing for July 10, 2023.[8] (*Id*. at ¶ 77). Plaintiff attended this meeting with her counsel. (*Id*. at ¶ 79). Plaintiff alleges that she "was precluded a meaningful opportunity to be heard." (*Id*.). At the hearing, the City had Deputy City Attorney Lisa Rogers, Human Resources Business Partners Kritina Porreco and Angela Tran, and Deputy Chief Frome. (*Id*. at ¶ 80). Plaintiff was informed by the City representatives that due to her CJIS clearance revocation, non-disciplinary separation was the only option. (*Id*.). Plaintiff alleges that other options such as redeployment, demotion, or continued administrative leave were options. (*Id*. at ¶ 81). Plaintiff does not indicate that she or her counsel suggested or raised such options during the hearing. (*Id*.). Plaintiff alleges that the "quantum of process" at the hearing was negligible given Plaintiff's twenty-eight-year employment with the City. (*Id*. at ¶ 82). Plaintiff received formal notice of her separation on July 11, 2023. (*Id*. at ¶ 83).

On December 13, 2023, at a judicial settlement in Plaintiff's criminal proceeding the court was apprised of the evidence against Plaintiff. (*Id*. at ¶ 84). The court indicated it would work with the District Attorney to resolve the charges against Plaintiff. (*Id*.). On March 1, 2024, at another judicial settlement conference, the court asked if the District Attorney would reconsider charges if Plaintiff took a polygraph test. (*Id*. at ¶ 86). During this settlement conference, the District Attorney "vociferously" told Plaintiff that, "you'll never get your job back." (*Id*. at ¶ 87). Plaintiff took a polygraph, which "confirmed the veracity of her statements."

_____

[7] Again, the TAC alleges March 31, 2024. However, based on context of the TAC and conferral with Plaintiff's counsel, the actual date appears to be March 31, 2023.
[8] Again, the TAC alleges July 10, 2024. However, based on context of the TAC and conferral with Plaintiff's counsel, the actual date appears to be July 10, 2023.

**Page 8 –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

(*Id.*). The District Attorney subsequently dropped two charges of hindering the prosecution prior to the start of Plaintiff's trial. (*Id.* at ¶ 88).

On March 15, 2024, during the criminal trial, the court dismissed the remaining Hindering Prosecution charges and the Tampering with Evidence charge. (*Id.* at ¶ 89). Plaintiff was acquitted on the sole remaining count of Official Misconduct. (*Id.* at ¶ 90). Detectives Hertzler and Samora "storm[ed] out of the courtroom" following the acquittal. (*Id.* at ¶ 90).

On July 31, 2024, approximately one year after formally terminating Plaintiff's employment, the City sustained an Internal Affairs investigation for: "(1) misusing PPB's equipment by accessing an investigation data base [sic] for information regarding her husband; (2) providing untruthful statements to homicide Detective Samora; (3) deceptively utilizing her PPB employment to gain access to restricted areas in the Central precinct; and (4) failing to inform PPB supervisor of her March 15, 2023 indictment." (*Id.* at ¶ 91).

## III.    Legal Standard

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp.*, 550 U.S. at 555). A Rule 12(b)(6) motion tests whether there is a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015).

In evaluating a motion to dismiss, the Court must accept the allegations of material facts as true and construe those allegations in the light most favorable to the non-moving party. *Taylor,* 780 F.3d at 935. Significantly though, the Court need not accept as true legal conclusions

**Page 9 –    CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

or legal arguments couched as factual allegations. *See Iqbal*, 556 U.S. at 678–79 (a court does not accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Further, broad allegations that are generally stated against numerous defendants without sufficient specification to put defendants on notice do not satisfy the requirements of Fed. R. Civ. P. 8. *See Gauvin v. Trombatore et al.*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988). Put another way, "shotgun pleading" happens when "one party pleads that multiple parties did an act, without identifying which party did what specifically, or when one party pleads multiple claims and does not identify which specific facts are allocated to which claim, or when some of the named defendants do not appear in the factual allegations." *First Citizens Bank & Tr. Co. v. HSBC Holdings*, 2024 WL 115933, at *13 (N.D. Cal. Jan. 10, 2024). "A complaint that employs this pleading device violates Rule 8 and should be dismissed." *Gibson v. City of Portland*, 2024 WL 811242, at *5 (D. Or. Feb. 26, 2024) (quoting *HSBC Holdings*, 2024 WL 115933, at *13).

## IV. Argument

### A. First Cause of Action: Malicious Prosecution (4th Amendment) – The factual allegations in the TAC do not support a conclusion that City Defendants initiated Plaintiff's prosecution or that the prosecution lacked probable cause.

Plaintiff brings her malicious prosecution claim against Chief Lovell, Detective Hertzler, and Detective Samora. As an initial matter, there are no allegations at all regarding Chief Lovell's participation in Plaintiff's prosecution. For this reason, the First Cause of Action should be dismissed with respect to Chief Lovell. Even with respect to Detectives Hertzler and Samora, Plaintiff's malicious prosecution claim relies on conclusory assertions of law, not specific factual allegations. Plaintiff's allegations with respect to Detectives Hertzler and Samora, taken as true and with all reasonable inferences taken therefrom, are insufficient to satisfy the elements of malicious prosecution.

**Page  10  –  CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

"In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [her] with malice and without probable cause, and that they did so for the purpose of denying [her] equal protection or another specific constitutional right.'" *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citing *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir.1995)). In the Ninth Circuit, a claim for malicious prosecution under § 1983 incorporates the elements of the applicable state law claim, but also requires that the malicious prosecution was conducted "for the purpose of denying the § 1983 plaintiff a specific constitutional right." *Bliss v. Adewusi*, 2023 WL 6961979, at *20 (D. Or. Oct. 20, 2023) (citing *Awabdy*, 368 F.3d at 1066).

To state a claim for malicious prosecution in Oregon, a plaintiff must allege facts sufficient to satisfy the following six elements:

> (1) the institution or continuation of the original criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceeding; and (6) injury or damage because of the prosecution.

*Blandino v. Fischel*, 179 Or. App. 185, 190-191 (2002) (internal quotations and citation omitted). Plaintiff's allegations do not support a conclusion that the criminal proceedings against her were instituted at the insistence of Detectives Hertzler or Samora or that prosecutors lacked probable cause to bring the charges.

1.    **City Defendants are entitled to absolute judicial immunity with respect to a claim that arise from testimony to the grand jury.**

The City Defendants are entitled to absolute immunity to the extent the malicious prosecution claim rests on grand jury or trial testimony by Defendants Hertzler or Samora. Absolute immunity focuses not on the status of the defendant, but rather the function that they serve. *Briscoe v. LaHue*, 460 U.S. 325, 342 (1983).

It is well understood that judges and prosecutors are not liable for damages under Section 1983 for their conduct in connection with their respective duties in judicial proceedings. *Id*. at

**Page  11  –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

334. In *Briscoe*, the U.S. Supreme Court examined the role of a police officer as a testifying witness and found that a police officer appearing as a witness may be reasonably viewed like any other witness sworn to tell the truth and can thus claim witness immunity. *Id*. at 335-36. Further, the officer may also be regarded as an "official performing a critical role in the judicial process" which would enable him to seek the benefit afforded to other governmental participants in the same proceeding. *Id*. Indeed, "[n]othing in [§ 1983's language] suggests that such a [police officer] witness belongs in a narrow, special category lacking protection against damages suits."

*Id*. The Court held that:

> to the extent that traditional reasons for witness immunity are less applicable to governmental witnesses, other considerations of public policy support absolute immunity more emphatically for such persons than for ordinary witnesses. Subjecting government officials, such as police officers, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties.

*Id*. at 342-43.

Here, Plaintiff alleges that "Defendant Detectives," which presumably includes Detectives Hertzler and Samora, presented evidence to the grand jury that "was exaggerated, fallacious and fabricated." (ECF 26, ¶ 50). To the extent Plaintiff's malicious prosecution claim is premised on this allegation, the detectives were performing a function integral to the judicial process—testifying before the grand jury in a criminal proceeding. Even if Plaintiff questions the truthfulness of that testimony, Detectives Hertzler and Samora are entitled to absolute judicial immunity for the statements made to the grand jury. *See Gibson v. City of Portland*, 2024 WL 811242, at *20 (D. Or. Feb. 26, 2024) (finding city defendants absolutely immune for all claims that arise from detective's testimony before the grand jury). Consequently, the Court should dismiss Plaintiff's malicious prosecution asserted against Detective Hertzler or Samora to the extent that it is premised on their testimony.

**Page 12 –  CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

2.    **Plaintiff has not alleged that her criminal prosecution was initiated at the insistence of any City employee.**

"[T]he requirement that the defendant be the party who initiates the underlying criminal proceeding is merely a way to describe the causation element of the tort." *Westwood v. City of Hermiston*, 787 F. Supp. 2d 1174, 1192-1193 (D. Or. 2011). A person must have an "active role" in the prosecution for liability to attach. *Waldner v. Dow*, 128 Or. App. 197, 201 (1994). Appearing as a witness and aiding the prosecution, even with the knowledge the charges are groundless, is not sufficient. *Id*. This rule extends to police officers. *Rogers v. Hill*, 281 Or. 491, 499 (1978).

"The decision to pursue a criminal action is generally made based on an independent determination by a prosecutor, and thus precludes liability for those who participated in the investigation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007) (citing *Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981)). A malicious prosecution claim may lie only against government officials who "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy*, 368 F.3d at 106.

Here, Plaintiff alleges that "Defendants Lovell, Frome, Santos, Hertzler, and Samora were actively involved in causing Plaintiff to be prosecuted[.]" (ECF 26, ¶ 96). Plaintiff further asserts that their involvement included, "undertaking a partial and slanted investigation, fabricating material evidence relied upon by the District Attorney's office, withholding exculpatory evidence, and conjuring and perpetuating false narratives with respect to [Plaintiff's] presence at the Southwest precinct on or about April 5, 2021." (*Id*.). But Plaintiff fails to allege any facts supporting these recitations of this element of malicious prosecution. For example, Plaintiff fails to allege what exculpatory evidence was withheld or what evidence was fabricated

**Page  13  –    CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

by Chief Lovell or Detectives Hertzler and Samora. (*Id*. at ¶¶ 50, 58 n.3,[9] 61, 62, 63,[10] 92, 96, 102, 103, 117, 119, 120, 121, 129,[11] 133). To the contrary, Plaintiff alleges that the District Attorney pursued charges against her without sufficient evidence, causing skepticism from the Court. (ECF 26, ¶¶ 84-87). There are not allegations that Detectives Samora or Hertzler provided the District Attorney with fabricated evidence or withheld exculpatory evidence. (*Id*.). In short, as alleged, the District Attorney, with the same evidence available to the detectives, chose to bring charges against Plaintiff.

The District Attorney, not PPB officers or other City employees, has the authority to make charging decisions. *See* ORS 8.660; ORS 132.330. There are not even allegations that any City Defendants recommended a particular charge. There are no allegations that the Detectives Samora or Hertzler took any steps to influence the charging decisions of the District Attorney with respect to the criminal charges brought against Plaintiff. In short, there is also no allegation that City Defendants exerted improper pressure on the District Attorney to pursue criminal charges against Plaintiff.

Because "[n]othing in the [TAC] rebuts the presumption" of the prosecutor's independent judgment, Plaintiff cannot prevail in her malicious prosecution claim. *Buckley v. Wagstaffe*, 2022 WL 2442733, at *6 (N.D. Cal. Mar. 8, 2022); *see also East v. City of Richmond*, 2010 WL

---

[9] Plaintiff alleges that Defendant Santos knew that Plaintiff accessed the thirteenth floor using a visitor's badge, not by exercising her employment duties to bypass official channels. (ECF 26, ¶ 58). First, there are no similar allegations regarding the Defendants Hertzler or Samora. And, contradictorily, Plaintiff herself more specifically alleges that she did obtain a visitor's badge because she was known as a PPB employee and was let into the restricted area because she was known as an employee. (*Id*. at ¶¶ 41-42).

[10] Plaintiff here alleges that both Detective Santos and Hertzler fabricated that "she had aggressively pressured the front desk clerk and Detective Santos to allow her to speak with the assigned Detective, Defendant Hertzler." (ECF 26, ¶ 62). While Detective Hertzler is identified in this allegation, it is unclear what role she had in the alleged fabrication of a narrative about something that she allegedly did not witness.

[11] Plaintiff here alleges that the facts supporting probable cause "were reliant on fabricated evidence, i.e., exculpatory laboratory results with respect to the tampering of evidence charge." But Plaintiff does not allege that Defendants Hertzler or Samora either tampered with or withheld the laboratory reports from the District Attorney.

**Page 14 – CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

4580112, at *3 (N.D. Ca. Nov. 3, 2010) (granting motion to dismiss where the complaint "fails to allege any facts establishing that either [officer] caused or pressured the prosecutor to act contrary to his or her independent judgment or that they knowingly provided false information to the prosecutor.").

As alleged, there is no reasonable inference that any City Defendant initiated the prosecution against Plaintiff. Thus, Plaintiff has not adequately alleged the second element of a malicious prosecution claim, and the Court should dismiss Plaintiff's First Cause of Action.

**3.    Plaintiff has not alleged facts supporting a conclusion that her prosecution was initiated without probable cause.**

Under Oregon law, "probable cause is a complete defense to malicious prosecution[.] *Hernandez v. Jefferson Cnty. Sheriff's Off.*, 2021 WL 7542408, at *9 (D. Or. Nov. 16, 2021) (citing *Gigler v. Klamath Falls*, 21 Or. App. 753, 759-63 (1975). Here, Plaintiff was indicted by a grand jury. (Sheffield Decl. at ¶ 2, Ex. 1). "A grand jury indictment constitutes prima facie evidence of probable cause." *Libby v. City of Medford*, 2017 WL 2219995, at *5 (D. Or. Mar. 17, 2017) (citing *Shoemaker v. Selnes*, 220 Or. 573, 581 (1960)); *see also Awabdy*, 368 F.3d at 1066. Plaintiff has not alleged any facts that would overcome this prima facie showing that there was probable cause for the charges brought by the MCDA against Plaintiff.

Plaintiff alleges no reasonable person in the position of the City Defendants would have believed there was probable cause to arrest Plaintiff. (ECF 26, ¶ 98). But the probable cause determination was never made by the City Defendants. Plaintiff was indicted by a grand jury, which made the probable cause determination. (Sheffield Decl., ¶ 2, Ex. 1). Further, Plaintiff was arrested on a warrant based on the grand jury indictment. (*Id.* ¶ 3, Ex. 2). Plaintiff includes no factual allegations that would rebut the presumption of the grand jury's independent determination of probable cause. At most, Plaintiff conclusorily alleges that "[u]pon information and belief, the evidence that Defendant Detectives presented at the [grand] jury was exaggerated, fallacious, and fabricated." (ECF 26, ¶ 50). Nowhere does Plaintiff identify the allegedly

**Page  15  –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

perjured testimony. Nowhere does Plaintiff allege what information or evidence defendants fabricated. Nowhere does Plaintiff allege what statements to the grand jury were false. The TAC and the judicially noticeable documents do not support a conclusion that any charges were brought against Plaintiff without probable cause. Therefore, the TAC does not satisfy the fifth element of malicious prosecution, and the Court should dismiss the First Cause of Action.

**B.**　　**Second Cause of Action: Fabrication of Evidence (14th Amendment) – Plaintiff has failed to allege any evidence fabricated by the City Defendants.**

Plaintiff brings her Fourteenth Amendment fabrication of evidence claim against all City Defendants. This claim similarly fails because it consists of conclusory assertions rather than factual allegations regarding the conduct of each City Defendant. Plaintiff generally asserts that each City Defendant, "deliberately fabricat[ed] evidence and/or rel[ied] upon such by intentionally disregarding exculpatory evidence, testimony and laboratory reports, concocting patently false allegations, and providing false and misleading evidence and testimony to the prosecuting attorney." (ECF 26, ¶ 102). However, as discussed above, the specific factual allegations in the TAC do not support such assertions.

A deliberate fabrication of evidence claim, requires Plaintiff to allege facts demonstrating: "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). For the first element – deliberate fabrication, the "plaintiff must first point to evidence he contends the government deliberately fabricated." *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015).

Explained a different way, for a deliberate fabrication of evidence claim, Plaintiff "must first identify the evidence she 'contends the government deliberately fabricated.'" *Mike v. City of Phoenix*, 2016 WL 5339693, at *5 (D. Ariz. Jan. 8, 2016). Then Plaintiff must allege that the fabrication was deliberate. *Id.*; *see also Alexander Torres v. Los Angeles Sheriff's Dept. et al.*, 2024 WL 4720808, at *6 (C.D. Cal. Aug. 14, 2024) ("Fundamentally, the plaintiff must first

**Page 16 –　CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

point to evidence he contends the government deliberately fabricated." (quoting *Scherschligt*, 889 F.3d at 1112)). Because alleging intent is difficult, Plaintiff may establish intent through two circumstantial ways: "(1) defendants continued their investigation into him even though they knew or should have known that he was innocent, or (2) defendants used investigative techniques that were so coercive and abusive they knew or should have known that their tactics would yield false information." *Kaady v. Shiferaw*, 2023 WL 4163094, at *5 (D. Or. May 11, 2023), *report and recommendation adopted*, 2023 WL 4156931 (D. Or. June 23, 2023) (citing *Deveraux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001). However, "[t]hese methods are not themselves independent causes of action. Rather they are methods of providing one element— intent—of a claim that the government deliberately fabricated the evidence at issue." *Scherschligt*, 803 F.3d at 386.

As an initial matter, the TAC includes no allegations regarding Chief Lovell, Commander Jensen, Captain Quick, Captain Lindsey, or Detective Baer participating in any way in the collection or sharing of evidence related to the criminal investigation at issue in this case. (*See generally* ECF 26).[12] Plaintiff alleges that all of the City Defendants "generat[ed] and submit[ed] false police reports and other documents" relied upon to obtain the indictment and prosecute Plaintiff. (*Id*. at ¶ 103). And she alleges very generally that "Defendants Hertzler, Samora, Quick, Jensen, and Lindsey were well apprised of Karen's exculpatory intention." (*Id*. at ¶ 60). Plaintiff also alleges that this unidentified "fabricated evidence" was used to sustain the findings of the internal affairs investigation. (*Id*. at ¶ 103). But, as discussed above, Plaintiff fails to identify any false reports or evidence. And, more specifically, Plaintiff fails to allege how any of

---

[12] Plaintiff alleges that Detective Baer obtained a search warrant related to a separate, February 2023 incident. (ECF 26, ¶ 51 n.2). While Plaintiff alleges that warrant "relied on patently unfounded and false information," Plaintiff never identifies the information. (*Id*.). Instead, Plaintiff appears to concede that there was "a February 2023 armed robbery at the Superette where a customer and friend of the homeless perpetrator contacted the police after the incident and reported that Karen's husband had and/or brandished a firearm." (*Id*.).

**Page  17  –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

these City Defendants participated in the creation or use of the false reports and evidence.

With respect to Detective Hertzler, Plaintiff alleges that she approached Plaintiff and separated her from her husband. (*Id*. at ¶ 32). Plaintiff alleges that Detective Hertzler informed her that a warrant had been issued for her arrest. (*Id*. at ¶ 51). Plaintiff alleges that laboratory reports did not show "application of soap, solvent, or bleach which was a hypothesis that Defendants Hertzler, Santos, and Samora" had relied upon. (*Id*. at ¶ 56). And Plaintiff confusingly alleges that Detective Hertzler fabricated events regarding the interactions that Plaintiff had while trying to meet with her. (*Id*. at ¶ 63). Notably, Plaintiff does not allege that Detective Hertzler or any other City Defendant concealed the alleged laboratory results from the District Attorney or otherwise lied about these results. Finally, Plaintiff alleges that following her acquittal Detectives Hertzler and Samora "palpably displayed disappointment" and "storm[ed] out of the courtroom." (*Id*. at ¶ 90). Nothing in these allegations supports a conclusion that Detective Hertzler fabricated any evidence or pursued an investigation when she knew Plaintiff was innocent. *See Devereaux v. Abbey*, 263 F.3d at 1077 ("an allegation that an interviewer disbelieved an initial denial [of a child witness of suspected sexual abuse] and continued with aggressive questioning of the child cannot, without more, support a deliberate-fabrication-of-evidence claim[.]").

Plaintiff has even fewer allegations with respect to Detective Samora. Plaintiff alleges that Detective Samora escorted Plaintiff to the PPB vehicle where she was interviewed. (ECF 20 at ¶ 32). Plaintiff alleges that Detective Samora interviewed Plaintiff without indicating that Plaintiff "was being interrogated . . . as a potential suspect." (*Id*. at ¶ 33). Plaintiff "willingly" entered into the patrol car to respond to questions. (*Id*.). Detective Samora did not affirmative tell Plaintiff that "she was not being detained and was thus, fee to refrain from engaging in further conversation with the Detectives." (*Id.* at ¶ 34). Plaintiff also alleges that Detective Samora or Corona "encouraged her to 'just tell the truth.'" (*Id*. at ¶ 33). Plaintiff alleges that Detective

**Page  18 –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

Samora persisted in attempting to get Plaintiff to share information that she did not have about her husband's whereabouts. (*Id*. at ¶ 37). During the interview, it became clear to Plaintiff that her husband was a suspect in Mr. Dekker's murder. (*Id*. at ¶ 38). Here again, Plaintiff has not alleged sufficient facts to show that Detective Samora fabricated evidence or pursued an investigation when she knew Plaintiff was innocent.

Importantly, Plaintiff's allegations, as discussed above, fail to satisfy the first prong of identifying evidence that any of the City Defendants allegedly deliberately fabricated. In *Souliotes v. City of Modesto*, 2016 WL 3549266 (E.D. Cal. June 29, 2016), the district court considered a motion to dismiss where the allegations did not identify the fabricated evidence. *Id*. at *9. The court explained that "[p]laintiff's claim about how Defendants may have characterized his financial situation and his relationship with his tenants is insufficient because it fails to identify *which statements* were misrepresented and *what evidence* was falsified with respect to these allegations." *Id*. (emphasis in original). The court went on to specifically address allegations that the defendants altered testimony and "falsified their reports," but concluded that such allegations were insufficient because they fail to identify the specific testimony or reports in question. *Id*. at *10.

Further, Plaintiff's TAC "does not plausibly tie the identified evidence to an identified deprivation of liberty." *Gilton v. City & Cnty. of San Francisco*, 2023 WL 5600082, at *8 (N.D. Cal. Aug. 29, 2023); *Souliotes v. City of Modesto*, 2016 WL 3549266 at *10 (noting the inadequacy in a pleading where plaintiff did not allege that the allegedly fabricated report "was relied upon by prosecutors or otherwise affected the fairness of his trial."); *Alvarez v. Sitts*, 2020 WL 5027131, at *13 (D. Or. Aug. 25, 2020) ("The Proposed Complaint does not allege what evidence was provided to whom that led to deprivation of his liberty."). Here, while there are allegations that certain laboratory evidence did not support the hypotheses of Detectives Hertzler and Samora and that Plaintiff was completely honest in her interview, there is no allegation that

**Page 19 – CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

these Detectives failed to provide complete and accurate information to the District Attorney.

Plaintiff has failed to allege precisely what evidence any City Defendant fabricated in support of her fabrication of evidence claim. She has similarly failed to allege that any allegedly fabricated evidence or false testimony was ever provided to, let alone relied upon by, the District Attorney in deciding to bring the criminal charges against her. For each of these independent reasons, Plaintiff has failed to state a Fourteenth Amendment fabrication of evidence claim and the Court should dismiss Plaintiff's Second Cause of Action.

**C.    Third Cause of Action: First Amendment Retaliation – The TAC does not include factual allegations from which a jury could conclude that any City Defendants were aware of Plaintiff's alleged First Amendment activity.**

Plaintiff alleges that all City Defendants engaged in First Amendment retaliation in connection with Plaintiff's organization and offering of free community events and activities in Goose Hollow. (ECF 26, ¶ 106). However, even if Plaintiff adequately alleged that she was engaged in constitutionally protected activity, the TAC contains nothing more than conclusory assertions of a connection between that activity and Plaintiff's criminal investigation and prosecution.

A First Amendment retaliation claim requires that Plaintiffs allege (1) they "engaged in constitutionally protected activity; (2) [the City's] actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the [City's] conduct—i.e., that there was a nexus between the [City's] actions and an intent to chill speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).

Plaintiff asserts in the Third Cause of Action that her advocacy with the Goose Hollow neighborhood "was a substantial motiving factor in Defendants' refusal to cease from perpetrating a warrantless, evidentiary infirm and intentionally orchestrated arrest and subsequent prosecution against Plaintiff where the result of such would unequivocally 'chill the

**Page  20 –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

reasonable exercise of protected First Amendment rights.'"[13] (ECF 26, ¶ 107). Even assuming that Plaintiff adequately alleged that she engaged in protected activity, by hosting dinners, gatherings, karaoke nights, and food distributions (*id.* at ¶ 21), there is no indication that the criminal investigation or prosecution related in any way to this activity.

As an initial matter, as discussed above, there are no allegations to suggest that Chief Lovell, Commander Jensen, Captain Quick, Captain Lindsey, or Detective Baer were in any way involved in Plaintiff's criminal investigation or prosecution. Further, there is no allegation that any City Defendant was aware of any advocacy work or other protected First Amendment activity that Plaintiff engaged in. (*See* ECF 26, ¶¶ 21-25). At most, Plaintiff asserts that some unidentified defendant at an unidentified time "expressed . . . their negative judgments and opinions of how and why Plaintiff chose to live, work and associate with Goose Hollow's demographic." (*Id.* at ¶ 25).

To succeed with a First Amendment retaliation claim, "plaintiff must allege facts 'ultimately enabling him to prove the elements of retaliatory animus as the cause of injury with causation being understood to be but-for causation.'" *Senn v. Multnomah Cnty.*, 527 F. Supp. 3d 1255, 1265 (D. Or. 2021) (quoting *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012)). Here, Plaintiff's allegations fall far short. The Court should, therefore, dismiss Plaintiff's Third Cause of Action for First Amendment retaliation.

**D.     Fourth Cause of Action: Procedural Due Process (14th Amendment) – The factual allegations in the TAC demonstrate that Plaintiff received both notice and an opportunity to be heard prior to termination.**

For the TAC's Fourth Cause of Action, Plaintiff alleges Chief Lovell violated her right to due process in connection with her termination. (ECF 26, ¶¶ 110-115). Procedural due process provides "a guarantee of fair procedure in connection with any deprivation of life, liberty, or

---

[13] This is the only allegation in the TAC that there were "warrantless" acts. To the contrary, the TAC references to both search and arrest warrants obtained prior to police action. (ECF 26, ¶ 32, 51 n.2).

**Page  21  –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

property" by the government. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). To state a claim, Plaintiff must allege, "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). The allegations contained in the TAC do not and cannot satisfy the third element—lack of process.

Assuming, without conceding, that Plaintiff had a property interested in her continued employment with the City, "the question remains what process is due." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (quoting *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972)). Generally, "due process is 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976). "The essential requirements of this pre-termination process are notice and an opportunity to respond." *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 332 (9th Cir. 1995) (emphasis omitted). "More specifically, when an employee has a constitutionally protected property interest in their employment, due process requires '[1] oral or written notice of the charges against [them], [2] an explanation of the employer's evidence, and [3] an opportunity to present [their] side of the story.'" *Merrill v. Lane Fire Auth.* , 2022 WL 3448806, at *6 (D. Or. July 19, 2022) (quoting *Loudermill*, 470 U.S. at 546).

Plaintiff asserts that the process for her termination was constitutionally lacking because the process provided for in HRAR 5.01 "was duly inadequate given Plaintiff's twenty-eight year tenure and that termination of that tenure was threatened solely on account of Plaintiff's arrest and criminal prosecution." (ECF 26, ¶ 112). Plaintiff fails to identify what part of the process set forth in HRAR 5.01 was inadequate. Moreover, Plaintiff does not explain, and the City has been unable to identify legal authority that supports Plaintiff's assertion that she was entitled to preferential treatment or additional process due to her 28-year tenure and the fact that she was facing criminal prosecution.

**Page  22  –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED
            COMPLAINT**

Plaintiff also alleges that the HRAR 5.01 requires "seven day notice of the City's proposed disciplinary action," but that the City failed to provide such notice to Plaintiff. (*Id*. at ¶ 78). Plaintiff's assertion that she was not provided notice is inconsistent with her allegation that it was communicated to her on May 10, 2024, over sixty days before the due process meeting was held, that she was being terminated due to revocation of her CJIS clearance. (ECF 26, ¶¶ 68-69). And Plaintiff did, in fact, attend the due process hearing. (ECF 26, ¶ 77, 79). While Plaintiff asserts the conclusion that she was denied an opportunity to be heard at this meeting, (*id.* at ¶ 79), she provides no factual explanation of how that occurred. She attended the meeting with her attorney, (*id.*), and there are no allegations that she was denied an opportunity to share her version of events. (*Id.* at ¶¶ 79-81). In short, as alleged, Plaintiff has asserted that she received notice of her termination and the reasons for it, and she attended a hearing to respond.

Plaintiff specifically alleges that she was denied an opportunity to be heard because City employees, but none of the City Defendants, informed her "that on account of the revocation of her CJIS security clearance [she] was no longer able to carry out her function as an Administrative Supervisor and as such, non-disciplinary separation was the only option." (ECF 26, ¶ 80). Plaintiff, as alleged in the Complaint, does not agree with the City employee's conclusions regarding the revocation of her CJIS security clearance. (*Id*. ¶ 81). However, there is no allegation that Plaintiff or her attorney were prevented from raising these alternatives. In short, Plaintiff appears to allege that there were adequate processes, but she largely opted not to pursue the process and was unsatisfied with the outcome. This is not sufficient to state a due process claim. *Lalack v. Oregon*, 2013 WL 819789, at *19 (D. Or. Mar. 5, 2013) ("The Due Process Clause does not guarantee a 'correct' decision.").

Plaintiff's allegations demonstrate that she was given both notice and an opportunity to be heard prior to her termination. Moreover, Plaintiff has alleged only general conclusions, without any factual support regarding the participation by Chief Lovell in her termination of.

**Page 23 – CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

(ECF 26, ¶¶ 64-83). Plaintiff has, in short, failed to adequately plead a due process claim against Chief Lovell, and the Court should dismiss Plaintiff's Fourth Cause of Action.

**E.     Fifth Cause of Action: Failure to Intercede – Plaintiff has failed to allege that any City Defendant had a reasonable opportunity to intercede in the allegedly unconstitutional acts of the co-defendants.**

Plaintiff advances four theories of how City Defendants failed to intercede in the violation of Plaintiff's constitutional rights. However, none of these theories are supported by factual allegations that the City Defendants had a reasonable opportunity to intervene to stop an alleged constitutional violation of a co-defendant.

Generally, "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id*. Ninth Circuit decisions "look to the facts of the alleged failure to intervene to see whether the plaintiff sufficiently alleged . . . that the officers had a realistic opportunity to intervene." *Segura v. Milleri*, 2022 WL 1165728, at *2 (D. Or. Apr. 20, 2022); *Rubalcava v. City of San Jose*, 2021 WL 2987164, at *10 (N.D. Cal. July 15, 2021) (factual allegations that simply allege that individual defendants failed to intervene to stop improper pressure, fabrication of reports, and concealment and suppression of evidence were insufficient to state a claim).

As an initial matter, Plaintiff's failure to intercede claim should be dismissed because it is not an independent claim but relies on a separate constitutional violation. As discussed above, Plaintiff has not sufficiently alleged facts to support the conclusion that any defendants committed a separate constitutional violation. Plaintiff's failure to intercede claim, therefore, fails as a matter of law. *See Gilton v. City and Cnty. of San Francisco*, 2023 WL 5600082, at *11 (N.D. Cal. Aug. 29, 2023) (explaining that failure to intervene is a derivative claim requiring an underlying constitutional violation). However, Plaintiff's factual allegations further do not

**Page  24 –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

support a conclusion that the City Defendants had a reasonable opportunity but failed to intercede under Plaintiff's four theories.

First, Plaintiff asserts that Detectives Hertzler and Samora were apprised of the alleged "fabrication of evidence, withholding of exculpatory evidence, and conjuring and perpetuating false narratives with respect to [Plaintiff's] presence at [Central] precinct" that allegedly they Detective Santos perpetrated. (ECF 26, ¶ 117). With respect to the actions of the detectives, Plaintiff asserts that each of them failed to intercede with respect to their own allegedly unconstitutional acts. (ECF 26, ¶ 117-118). This does not suffice for a failure to intercede claim. *See Marble v. Missoula Cnty.*, 2020 WL 6043858, at *8 (D. Mont. Oct. 13, 2020) (alleging that defendant failed to intercede with respect to his own acts was insufficient to state a claim); *Milke v. City of Phoenix*, 2016 WL 5339693, at *13 (D. Ariz. Jan. 8, 2016) (plaintiff offered no explanation of how it "makes any sense" that defendant failed to intercede to stop his own fabrication of a confession). Further, Plaintiff, while alleging the conclusion that Detective Hertzler and Samora had "ample opportunities to intercede," includes no factual allegations to support this assertion. There are no allegations that Detective Samora or Detective Hertzler were aware of the allegedly unconstitutional acts of each other or Detective Santos or were in a position to reasonably stop such acts. It is insufficient to simply allege that all defendants were working the case together and therefore could have reasonably stopped another's allegedly unlawful acts. *Milke*, 2016 WL 5339693, at *13.

Second, Plaintiff alleges that Chief Lovell had supervisory and oversight authority with respect to the actions of Detectives Hertzler, Santos, and Samora. (*Id*. at ¶ 119). "A Supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (citation omitted). Plaintiff does not point to any

**Page  25  –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED
    COMPLAINT**

action or inaction by Chief Lovell. Instead, she simply alleges that he is ultimately responsible by virtue of his role as the Chief of Police. (ECF 26, ¶ 119). "Such a theory of vicarious liability is not permitted on these claims." *DeArmitt v. Clackamas Cnty.*, 2019 WL 1497042, at *14 (D. Or. Jan. 18, 2019).

Third, Plaintiff alleges that Commander Jensen and Captain Lindsey were apprised of the alleged fabrication by Detectives Hertzler, Santos, and Samora and had the opportunity to cease the internal affairs investigation and withdraw their disciplinary charges.[14] (*Id*. at ¶ 121). Here again, Plaintiff has failed to allege how either City Defendant was aware of the alleged constitutional violations of the other defendants, when they became aware, or how they could have reasonably intervened to stop the deprivation.

Finally, Plaintiff alleges that Captain Quick could have interceded to "thwart Defendants Hertzler, Santos and Samora's intentional 'entrapping' of [Plaintiff] by enabling the opportunity for her to violate both the Oregon Revised Statutes and PPB regulations." (ECF 26, ¶ 122). It appears that Plaintiff is alleging that Captain Quick knew that Plaintiff was going to Central Precinct on April 5, 2021, and could have anticipated a potential constitutional violation. (*Id*. at ¶¶ 58 n. 3, 123). There are no allegations that would demonstrate that Captain Quick knew of any alleged constitutional violations or had any reasonable opportunity to stop them.

Plaintiff's factual allegations are insufficient to demonstrate that any of the City Defendants knew of other defendant's alleged constitutional violations, had a reasonable opportunity to intervene, and failed to do so. The Court should, therefore, dismiss Plaintiff's Fifth Cause of Action against each City Defendant.

///

---

[14] Plaintiff does not allege, nor could she, that her internal affairs investigation resulted in discipline. In fact, Plaintiff was no longer an employee at the time the internal affairs investigation concluded. (ECF 26, ¶ 91). While Plaintiff alleges that this "created disciplinary grounds for permanently precluding Karen from working at the PPB ever again" she does not allege that she sought employment again at PPB or that such employment was denied.

**Page  26 –  CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

**F.      Defendants Lovell, Hertzler, Samora, Jensen, Quick, Lindsay, and Baer are entitled to qualified immunity for Plaintiff's First through Fifth Causes of Action.**

As discussed above, the City Defendants did not violate any of Plaintiff's constitutional rights, let alone any clearly established rights. As such, they are entitled to qualified immunity on the TAC's First through Fifth Causes of Action.

"In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Estate of Lopez by and through Lopez v. Gelhaus*, 871 F.3d 998, 1005 (9th Cir. 2017) (quoting *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014)). The Supreme Court has emphasized that qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (citations omitted). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority[.]'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citations omitted). Moreover, "the plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct." *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991); *see also Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (same).

The Supreme Court has repeatedly warned lower courts against denying qualified immunity to government officials responding to unique and challenging situations, explaining that "qualified immunity is important to 'society as a whole,' and because as 'an immunity from suit,' qualified immunity 'is effectively lost if a case is erroneously permitted to go to trial[.]'" *Pauly*, 580 U.S. at 79 (internal citation omitted) ("In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases."); *see also City and Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 1774, n.3 (2015) (collecting cases). The Ninth

**Page  27 –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

Circuit has "acknowledge[d] the Supreme Court's recent frustration with failures to heed its holdings" on qualified immunity. *S.B. v. City of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) (mem.).

As an initial matter, there are no concrete factual allegations to suggest that Chief Lovell, Commander Jensen, Captain Quick, Captain Lindsey, or Detective Baer took any actions related to Plaintiff's claims. Instead, Plaintiff relies on conclusory allegations regarding their roles at PPB and peripheral involvement with Plaintiff. Plaintiff's claims largely relate to the actions of Detective Hertzler and Detective Samora (and unserved defendants, Detective Santos and Deputy Chief Frome) in investigating the murder of Mr. Dekker and Plaintiff's termination. It appears that Plaintiff relies primarily on a failure to intercede theory for these individuals. However, as discussed above, the factual allegations do not support such a theory. Moreover, Plaintiff cannot point to clearly established caselaw that would suggest liability for failure to intercede related to these individuals who have no apparent connection with or knowledge of the alleged constitutional violations.

With respect to Detectives Hertzler and Samora, Plaintiff's claims stem from generalized allegations that they undertook a slanted investigation, fabricated evidence, withheld exculpatory evidence and perpetuated a false narrative with respect to Plaintiff's presence at Central Precinct. (*See* ECF 26, ¶¶ 96, 102, 107, 117). However, there are no factual allegations to support the claim that either of these detectives took any of these alleged actions. The closest that Plaintiff comes to any such allegation is that "Defendants Santos and Hertzler . . . stat[ed] that on the morning of April 5, 2021, when [Plaintiff] went to the Central Bureau to check on her husband, she had aggressively pressured the front desk clerk and Detective Santos to allow her to speak with the assigned Detective, Defendant Hertzler." (*Id*. at ¶ 64). It is unclear what role Detective Hertzler had in making this alleged statement, as opposed to Detective Santos. But notably, the

**Page  28  –  CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

alleged statements described activity that Detective Hertzler did not even allegedly observe.[15]

Because there are inadequate facts to support Plaintiff's constitutional claims against the City Defendants, and because there is no clearly established law that would have put a reasonable officer on notice that the alleged actions that they took were unconstitutional, the Court should dismiss each of Plaintiff's federal claims (First through Fifth Causes of Action) against each City Defendant.

**G.    Sixth Cause of Action: *Monell* - Plaintiff has failed to adequately allege a *Monell* claim against the City.**

Plaintiff asserts a *Monell* claim against the City of Portland for seemingly each of her five alleged constitutional violations. (ECF 26, ¶ 126-33). Plaintiff's *Monell* claim is predicated on a theory that Chief Lovell, as the Chief of Police, either acted as a final policymaker or ratified all of the decisions of the other named defendants. (*Id.*). However, the actual factual allegations do not support this theory, and the Court should dismiss Plaintiff's *Monell* claim.

Liability under Section 1983 only attaches to a municipality if it causes the constitutional violation through a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (requiring "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"); *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1232-33 (9th Cir. 2011).

To state a Section 1983 claim against the City, Plaintiff "must plead sufficient facts plausibly to allege that '(1) [the plaintiff] was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional

---

[15] There is no allegation that Detective Hertzler witnessed Plaintiff at Central Precinct or spoke to Plaintiff when she was at Central Precinct. (*See* ECF 26, ¶¶ 40-45).

**Page  29  –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

violation.'" *Nisley v. Rosenblum*, 2022 WL 1630011, at *11 (D. Or. May 23, 2022) (citations omitted); *see also O. L. v. Jara*, 2022 WL 1499656, at *3 (9th Cir. May 12, 2022); *Lockett v. Cnty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020). A policy may be demonstrated through (1) an official policy; (2) a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (3) the act of an "official whose acts fairly represent official policy such that the challenged action constituted official policy"; or (4) where "an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

However, there can be no municipal liability when there is no violation of a constitutional right. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). As explained above, Plaintiff has failed to adequately allege a violation of any constitutional right. For this reason alone, the Court should dismiss Plaintiff's Sixth Cause of Action.

Additionally, Plaintiff has not adequately alleged that Chief Lovell, as a person with final policy-making authority, took any actions related to Plaintiff's alleged constitutional violations. Beyond Plaintiff's conclusory allegations that Chief Lovell generally participated in every alleged constitutional violation, the TAC contains no allegations regarding the actions of Chief Lovell. (ECF 26, ¶¶ 93-134). In fact, Plaintiff has very limited specific allegations regarding Chief Lovell. She alleges that Chief Lovell, "as a final policymaking with respect to PPB personnel matters determined and ratified [Plaintiff's] termination." (*Id*. at ¶ 68). Plaintiff also alleges that Chief Lovell scheduled a termination hearing but does not allege that Chief Lovell participated in any way in that hearing. (*Id.* at ¶¶ 77-82). Additionally, with respect to termination, Plaintiff alleges that Chief Lovell either decided or ratified Plaintiff's non-disciplinary termination and the sustained internal affairs investigation findings. (*Id*. at ¶¶ 131-133). And with respect to the non-termination related claims, Plaintiff alleges that "upon information and belief, Chief Lovell made the final decision and/or ratified his subordinates['] . .

**Page 30 – CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

. decision to affirm the existence of probable cause[.]" (*Id.* at ¶ 129).

Each of the allegations regarding Chief Lovell's involvement are conclusory assertions of the elements of Plaintiff's claim, not factual allegations regarding his alleged involvement or ratification. To accept Plaintiff's general allegations regarding the involvement of Chief Lovell would be no more than embracing *respondeat superior* liability. The Court is not permitted to do so and should dismiss the Sixth Cause of Action.

**H.    Seventh[16] Cause of Action: Wrongful Discharge – Plaintiff did not provide timely tort claim notice and otherwise fails to state a claim for wrongful discharge.**

For the TAC's Seventh Cause of Action, Plaintiff asserts a state law tort claim against the City and Chief Lovell for wrongful discharge. (ECF 26, ¶¶ 135-140). Plaintiff contends that her discharge was wrongful because it was premised on her arrest and pending criminal prosecution. The Court should dismiss this claim because: (1) the Court lacks subject matter jurisdiction over the claim since Plaintiff failed to provide the City with timely notice of her tort claim; and (2) the TAC's factual allegations fail to allege facts to support the second element of a wrongful discharge claim—the exercise of an employment-related right or the fulfillment of an important public duty.

**1.    Plaintiff failed to provide timely tort claim notice to the City.**

Plaintiff failed to timely serve the City with tort claim notice pertaining to her wrongful discharge claim. As a state law tort claim, Plaintiff's wrongful discharge claim is subject to the Oregon Torts Claim Act. ORS 30.265.  Persons seeking to maintain actions against public bodies must do so in strict compliance with statutory provisions. *See Gable v. State ex rel. State Wildlife Comm'n.,* 23 Or. App. 670, 672 (1975). The OTCA requires that a notice of tort claim be given within 180 days after the alleged loss or injury. *See* ORS 30.275(1) and (2)(b). Timely notice is a substantive condition precedent to recovery under the OTCA that, if not satisfied, deprives a

---

[16] Plaintiff labels this as the Fifth Cause of Action in the TAC, but the City is referring to it as the Seventh for the purpose of clarity.

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

plaintiff of the right to make a claim against a public body. *See Tyree v. Tyree*, 116 Or. App. 317, 320 (1992). It is Plaintiff's burden to plead and prove that she has provided adequate notice. *See Urban Renewal Agency of Coos Bay v. Lackey*, 275 Or. 35, 40 (1976). Failure to provide the City with timely notice of a tort claim divests the Court of subject matter jurisdiction over that claim. *See Curzi v. Oregon State Lottery*, 286 Or. App. 254, 265 (2017) (concluding that trial court did not err for dismissing claim for lack of subject matter jurisdiction because the plaintiff failed to provide timely notice of his tort claim); *Pearce v. City of Portland*, 2023 WL 315913, at *5 (D. Or. Jan. 18, 2023) (stating that "[g]iving notice under the OTCA is a jurisdictional requirement").

In the TAC, Plaintiff alleges that the City terminated her employment on July 11, 2023 (ECF 26, ¶ 38), which makes that the date of her "alleged loss or injury." *See Hernandez-Nolt v. Washington Cnty.*, 259 Or. App. 630, 635 (2013) (noting that for a wrongful discharge claim, the "loss or injury is the discharge"). As such, Plaintiff was required to provide the City with tort claim notice by January 7, 2024, which is 180 days from when she was terminated. However, as Plaintiff alleges, she provided "Formal Notice of Claim upon the City of Portland by personal delivery on or about March 28, 2024." (*Id*. at ¶ 14). Plaintiff further alleges, without further explanation or factual clarification, that she provided actual notice to the City on May 25, 2023, (*id*.). That constitutes the *entirety* of the TAC's allegation about Plaintiff's compliance with the OTCA, which in and of itself is deficient. *See Georgeson v. State*, 75 Or. App. 213, 216 (1985) (affirming dismissal of tort claim because the complaint's allegation about compliance with the OTCA was conclusory).

Importantly, Plaintiff's formal notice, as alleged, was untimely. And Plaintiff's alleged actual notice, is devoid of any factual details. The alleged actual notice, however, is also necessarily deficient, as it occurred over a month *before* Plaintiff's alleged loss. Plaintiff could not have provided the City with notice of her wrongful discharge claim on May 25, 2023 since

**Page 32 –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

her employment with the City was not terminated until July 11, 2023. Because Plaintiff has not alleged timely tort claim notice, the Court lacks subject matter jurisdiction over the Seventh Cause of Action, and the claim should be dismissed.

2.    **The TAC fails to allege sufficient facts to state a wrongful discharge claim.**

Plaintiff has failed to plead that she was terminated because she exercised a *job-related* right or fulfilled an important public duty. In the absence of such allegations, Plaintiff's wrongful discharge claim fails as a matter of law.

Oregon is an employment "at will" state, which means that "an employer may discharge an employee at any time [and] for any reason, unless doing so violates a contractual, statutory or constitutional requirement." *Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1050 (9th Cir. 2012). The "tort of wrongful discharge is a public-policy exception to [that] general rule[.]" *Vergara v. Patel*, 305 Or. App. 288, 302 (2020). To state such a claim, Plaintiff must allege "that the discharge occurred as the result of exercising a job-related right that reflects important public policy, or as the result of fulfilling an important public duty." *See Sharma v. Providence Health & Services-Oregon*, 289 Or. App. 644, 658-59 (2018). "Under Oregon law, however, 'a wrongful discharge claim is not available to a plaintiff who alleges that [she] was discharged in violation of a right in contrast to being discharged for pursuing that right.'" *Davis v. Con-Way Freight Inc.*, 139 F. Supp. 3d 1224, 1237 (D. Or. 2015), *aff'd,* 715 F. App'x 805 (9th Cir. 2018) (citation omitted).

Plaintiff has pleaded her wrongful discharge claim under only the "job-related right" prong of wrongful discharge.[17] However, the TAC includes no factual allegations to suggest that Plaintiff exercised an actual employment-related right. Instead, the TAC incorrectly asserts that the "tort of wrongful discharge requires a showing that a substantial factor in an employer's decision to discharge an employee was [the] employee's exercising a right that reflects an

---

[17] The TAC does not allege that Plaintiff was fulfilling any public duty or obligation.

**Page 33 – CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

important public policy." (ECF 26, ¶ 135). That is an incomplete statement of the law. To satisfy the first prong of this element of wrongful discharged, the right exercised must have been an "employment-related right," not just any right. *See Riofrio v. Del Monte Fresh Produce N.A., Inc.*, 2010 WL 4536794, at \*4 (D. Or. Nov. 2, 2010) (stating that "an employee may advance a wrongful discharge tort action . . . when an employee is fired for exercising statutory rights that relate to the employment"); *Cross v. Eastlund*, 103 Or. App. 138, 141 (1990) (stating that "[a]n employee has a claim for wrongful discharge if she is fired for pursuing a statutory right related to her role as an employee").

An employment-related right, or "job-related right," is defined as "a personal benefit or right to which the employee is entitled as a matter of public policy." *Brown v. Board of Educ.*, 207 Or. App. 163, 169 (2006). Put another way, it is a right "to which the worker is entitled by virtue of his or her employment." *See Handam v. Wilsonville Holiday Partners, LLC*, 225 Or. App. 442, 448 (2009), *adhered to on remand by* 235 Or. App. 688, 690 (2010). Examples of employment-related rights include filing a workers' compensation claim, *see Brown v. Transcon Lines*, 284 Or. 594, 603-04 (1978); resisting sexual discrimination in the workplace, *see Goodlette v. LTM, Inc.*, 128 Or. App. 62, 65-66 (1994); engaging in collective activities to bargain with the employer, *Rauda v. Oregon Roses, Inc.*, 147 Or. App. 106, 115 (1997), *vacated by* 329 Or. 265, 272 (1999) (dismissing appeal because of the lack of appellate jurisdiction); and taking protected leave under the Oregon Family Leave Act or FMLA, *see Weaver v. Netflix*, 2011 WL 4625697, at \*7 (D. Or. Aug. 16, 2011).

Instead of alleging that Plaintiff exercised a job-related right, the TAC generally asserts that there is strong public policy against relying on arrest or conviction history to inform employment decisions. (ECF 26, ¶ 136). Plaintiff further alleges that her termination for lack of CJIS clearance, which was revoked due to her arrest, "was solely based on preventing Plaintiff from exercising her right to defend against a criminal prosecution without her employer relying

**Page 34 –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

upon such status to impose the adverse employment action of termination as an express

contravention of public policy by[.]" (*Id*. at ¶ 138). As an initial matter, Plaintiff has not alleged

any facts that would support the conclusion that she was terminated due to her exercising her

right to defend herself in the criminal case. Instead, as Plaintiff alleges, she was terminated

because CJIS clearance was revoked as a result of the criminal charges against her. (*Id*. at ¶¶

137-138).

Further the "right to defend against a criminal prosecution" is a right conferred by the

Sixth Amendment on anyone who is accused of a crime. *See Faretta v. California*, 422 U.S. 806,

819 (1975). The right to defend oneself is not a right that was conferred on Plaintiff "by virtue"

of her employment with the City, nor is it a right that is related to the job she held at the City. *Cf*.

*Pratt v. Phoenix Home Life. Mut. Ins. Co.*, 285 B.R. 3, 8 (D. Or. 2001) (stating that filing for

bankruptcy does not constitute the exercise of an important job-related right). In short, Plaintiff's

rights related to her criminal prosecution, which are not the alleged basis for her termination, are

nonetheless not employment-related rights. For this separate reason, the Court should dismiss

Plaintiff's Seventh Cause of action.

## V.    Conclusion

For the reasons discussed above, independently and collectively, the Court should

dismiss Plaintiff's TAC against the City Defendants in its entirety.

DATED: January 14, 2025.

Respectfully submitted,

*/s/ Naomi Sheffield*
Naomi Sheffield, OSB No. 170601
Chief Deputy City Attorney
Email: naomi.sheffield@portlandoregon.gov
Trung D. Tu, OSB No. 004100
Senior Deputy City Attorney
Email: trung.tu@portlandoregon.gov

**Page  35 –  CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED
COMPLAINT**