**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**KAREN CHIRRE**,

Plaintiff,

v.

**CITY OF PORTLAND**, **CHARLES LOVELL III**, **MICHAEL FROME**, **JOSEPH SANTOS**, **JENNIFER HERTZLER**, **SHAYE SAMORA**, **JACOB JENSON**, **ROBERT QUICK**, **CHRIS LINDSAY**, **RACHEL BAER**,

Defendants.

Case No. 3:24-cv-1334-AR

**OPINION & ORDER**

Robert Roosevelt Parker, Jr., LAW OFFICE OF ROBERT R. PARKER JR. LLC, 838 SW First Avenue, Suite 400, Portland, OR 97204; and Ernest Warren, Jr., WARREN & SUGARMAN, 838 SW 1st Ave, Suite 200, Portland, OR 97204; Of Attorneys for Plaintiff.

Lucy G. Ohlsen, Trung D. Tu, and Naomi Sheffield, PORTLAND CITY ATTORNEY'S OFFICE, 1221 SW 4th Ave, Suite 430, Portland, OR 97204. Of Attorneys for Defendants City of Portland, Charles Lovell III, Michael Frome, Joseph Santos, Shaye Samora, Jacob Jenson, Robert Quick, Chris Lindsay, and Rachel Baer.

**Michael H. Simon, District Judge.**

United States Magistrate Judge Jeffery Armistead issued Findings and Recommendation ("F&R") in this case on June 9, 2026. Judge Armistead recommends that this Court deny Defendants' Motion to Dismiss (ECF 30) in part as to the portion of Claim One against

Defendants Santos and Hertzer; otherwise Judge Armistead recommends this Court grant Defendants' Motion to Dismiss on Claims One through Six with leave to amend and dismiss Claim Seven without leave to amend. Plaintiff raises several objections, which the Court addresses in turn.

## STANDARDS

### A. Review of Findings and Recommendation

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Rule 72(b) of the Federal Rules of Civil Procedure recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

**B. Motion to Dismiss**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation

marks omitted); *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (stating that to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure to survive a motion to dismiss, "plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" (quoting *Twombly*, 550 U.S. at 557)).

## DISCUSSION

Plaintiff timely filed an objection, to which City Defendants responded. Plaintiff objects to portions of Judge Armistead's F&R, asserting that (1) the Magistrate Judge did not properly apply Rules 12(b)(6) and 8(a)(2) of the Federal Rules of Civil Procedure in partially dismissing Plaintiff's malicious prosecution claim against Defendants Santos and Hertzler; and (2) Plaintiff alleged sufficient facts to support her deliberate fabrication of evidence claim against Defendants Santos, Hertzler, and Samora. The Court addresses each of Plaintiff's objections in turn, after a *de novo* review.

### A. Malicious Prosecution under § 1983

#### 1. Legal Standard for § 1983 Malicious Prosecution

The F&R applied Oregon's elements of malicious prosecution to Plaintiff's § 1983 malicious prosecution claim. The standard by which to evaluate a federal cause of action for a § 1983 malicious prosecution under the Fourth Amendment is unclear in this circuit. In *Awabdy v. City of Adelanto*, the Ninth Circuit set out the elements required for a § 1983 malicious prosecution claim as follows:

> A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of his "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983; *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-95 (1978). In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with

> malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002).

368 F.3d 1062, 1066 (9th Cir. 2004) (alterations in *Awabdy*); *see also Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189, *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995) ("Malicious prosecution, by itself, does not constitute a due process violation; to prevail Freeman must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right."). The *Awabdy* court went on to explain that whether the element of "lack of probable cause" was met required looking at the state court's action, and that federal courts look to state law "to determine the legal effect of the state court's action because we have incorporated the relevant elements of the common law tort of malicious prosecution into our analysis under § 1983." 368 F.3d at 1066.

Courts have cited *Awabdy* to support the proposition that a federal malicious prosecution claim incorporates the elements of the applicable state's tort of malicious prosecution. *See, e.g.*, *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) (stating without analysis that "[f]ederal courts rely on state common law for elements of malicious prosecution" and citing *Awabdy*, 368 F.3d at 1066); *Puccetti v. Spencer*, 2010 WL 3604530, at *4 (D. Or. Sept. 14, 2010), *aff'd*, 476 F. App'x 658 (9th Cir. 2011) (explaining that "[c]ourts look to state law when analyzing claims of malicious prosecution under 42 U.S.C. § 1983" and citing *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir.1987), and *Awabdy*, 368 F.3d at 1067); *Hemstreet v. Duncan*, 2008 WL 409165, at *5 (D. Or. Feb. 8, 2008) (stating that "[a]s a general matter, this

court consults state law in determining the effect of state court actions on a § 1983 malicious prosecution claim" and citing *Awabdy*, 368 F.3d at 1066). That is not, however, quite what *Awabdy* held. *Awabdy* set out the *elements* of a *federal* claim for malicious prosecution and only looked to state law because determining one of those elements (whether the underlying prosecution lacked probable cause) required evaluating state court action.

Additionally, in *Thompson v. Clark*, the Supreme Court evaluated a § 1983 claim for malicious prosecution. 596 U.S. 36, 43 (2022) ("The narrow dispute in this case concerns one element of the Fourth Amendment claim under § 1983 for malicious prosecution."). The *Thompson* Court stated: "To determine the elements of a constitutional claim under § 1983, this Court's practice is to first look to the elements of the most analogous tort as of 1871 when § 1983 was enacted, so long as doing so is consistent with 'the values and purposes of the constitutional right at issue.'" *Id.* (quoting *Manuel v. Joliet*, 580 U.S. 357, 370 (2017)). The Supreme Court concluded that "the most analogous tort to this Fourth Amendment claim is malicious prosecution" because "the wrongful initiation of charges without probable cause is . . . the gravamen of the tort of malicious prosecution." *Id.*

The Supreme Court then

> described the elements of the malicious prosecution tort as follows: (i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious, which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution terminated in the acquittal or discharge of the accused.

*Id.* at 44 (quotation marks omitted) (mirroring the elements set forth in *Awabdy*).

The dispute before the *Thompson* court involved the third element, and the Supreme Court held:

> Because the American tort-law consensus as of 1871 did not require a plaintiff in a malicious prosecution suit to show that his

> prosecution ended with an affirmative indication of innocence, we similarly construe the Fourth Amendment claim under § 1983 for malicious prosecution. Doing so is consistent, moreover, with "the values and purposes" of the Fourth Amendment. *Manuel*, 580 U.S.[] at 370. The question of whether a criminal defendant was wrongly charged does not logically depend on whether the prosecutor or court explained why the prosecution was dismissed. And the individual's ability to seek redress for a wrongful prosecution cannot reasonably turn on the fortuity of whether the prosecutor or court happened to explain why the charges were dismissed. In addition, requiring the plaintiff to show that his prosecution ended with an affirmative indication of innocence would paradoxically foreclose a § 1983 claim when the government's case was weaker and dismissed without explanation before trial, but allow a claim when the government's evidence was substantial enough to proceed to trial. That would make little sense. Finally, requiring a plaintiff to show that his prosecution ended with an affirmative indication of innocence is not necessary to protect officers from unwarranted civil suits—among other things, officers are still protected by the requirement that the plaintiff show the absence of probable cause and by qualified immunity.

*Id.* at 48-49.

Thus, the elements for a § 1983 claim appear established by the U.S. Supreme Court and do not incorporate current individual state law elements, but the general common law as of 1871. The Ninth Circuit's statement to the contrary in *Mills* was issued before *Thompson*. Additionally, the Ninth Circuit analyzed the malicious prosecution claim in *Mills* under California state law, wherein "the favorable termination element of a malicious prosecution claim 'requires a termination reflecting the merits of the action and plaintiff's innocence of the misconduct.'" *Mills*, 921 F.3d at 1170-71 (quoting *Pattiz v. Minye*, 61 Cal. App. 4th 822, 827 (1998)). This conclusion is directly contravened by *Thompson*'s conclusion that a § 1983 claim for malicious prosecution *does not* require a decision on the merits or one that reflects innocence. Thus, the application of state law to define the general elements of the claim appears foreclosed by *Thompson*.

The Ninth Circuit, however, recently stated, without analysis or mention of *Thompson*, that "[t]he elements of a malicious prosecution claim under § 1983 derive from the state law elements of malicious prosecution." *Ciria v. Gerrans*, 178 F.4th 491, 515 (9th Cir. 2026). Thus, the standard to apply in this circuit, particularly in light of *Thompson*, could benefit from some additional clarity by the Ninth Circuit. The Court need not resolve this ambiguity, however, because the elements currently at issue fall within both the "federal" requirements and Oregon's requirements[1]—whether the prosecution was initiated without probable cause and whether Defendants' motive was malicious.

**2. Analysis**

Plaintiff objects to the F&R's finding that Plaintiff failed to meet her pleading burden on her malicious prosecution claim against Detectives Santos and Hertzler[2] based on official

[1] Under Oregon law, a claim of malicious prosecution requires the plaintiff to prove: "(1) the institution or continuation of criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceedings; and (6) injury or damage as a result." *Miller v. Columbia Cnty.*, 282 Or. App. 348, 360 (2016) (footnote omitted).

[2] Plaintiff does not object to the F&R's analysis on this claim with respect to Defendants Lovell, Frome, and Samora.

misconduct[3] because she did not allege sufficient facts to rebut a finding of probable cause.[4] "Among the ways that a plaintiff can rebut a *prima facie* finding of probable cause is by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Awabdy*, 368 F.3d at 1067 (applying California law that is similar to Oregon law); *see also Drake v. Anderson*, 215 Or. 291, 295-96 (1959) ("[A] simple and direct averment that defendant's action of want of probable cause is a sufficient averment for the admission of evidence to rebut a prima facie case of probable cause. . . . [A]n allegation that the defendant knew the falsity of the crime charged in the complaint constitutes an adequate pleading of want of probable cause." (quotation marks omitted)). This can be shown by allegations that officers "knowingly provided misinformation to [the prosecutor], concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy*, 368 F.3d at 1067.

---

[3] The Magistrate Judge referenced Plaintiff's claim for malicious prosecution relating to her official misconduct charge as "fabricated motive evidence." ECF 83 at 18. But Plaintiff alleges more than just that Detectives Santos and Hertzler fabricated evidence about Plaintiff's motive in securing entry to the secured floor. Plaintiff also alleges that these Defendants, among others, fabricated evidence relating to her *conduct*, including that she gained entry to the secured floor by improperly using her police credential, claiming she was on work business, and being aggressive with staff.

The F&R references Plaintiff's claim for malicious prosecution relating to her tampering with evidence and hindering prosecution charges as "exculpatory laboratory results." The Court concludes that Plaintiff sufficiently alleged her malicious prosecution claim against Detectives Santos and Hertzler based on the tampering with evidence and hindering prosecution charges.

[4] Plaintiff also generally objects that in considering this element, the F&R failed to construe Plaintiff's complaint in its entirety and failed to apply the liberal pleading standard of Rule 8 of the Federal Rules of Civil Procedure. The Court resolves plaintiff's objections by considering *de novo* the specific allegations relating to whether she rebutted probable cause, keeping the appropriate standard in mind. Thus, the Court does not separately address these objections.

Plaintiff alleges that Detectives Santos and Hertzler fabricated evidence to support the official misconduct charge. Allegedly, Detectives Santos and Hertzler indicated that when Plaintiff went to the Central Bureau to check on her husband, she used her PPB credential to access the secured floor, claimed she was performing work duties, and had aggressively pressured the front desk clerk and Detective Santos to allow her to speak with the assigned Detective, Defendant Hertzler. *See, e.g.*, Third Amended Complaint ("TAC") ¶¶ 58, 63 (ECF 26). Plaintiff further alleges that Detectives Santos and Hertzler, under penalty of perjury, deliberately fabricated evidence by generating and submitting false police reports and other documents attesting to the existence of probable cause.[5] *Id.* ¶ 103. Plaintiff additionally alleges that these false documents were relied on by the prosecutor to obtain an indictment and prosecute Plaintiff. *Id.*

To further support the rebuttal of probable cause, Plaintiff alleges that upon learning that her husband was transported to the PPB Southwest Second Avenue location, Plaintiff went to the central precinct to check on her husband. TAC ¶ 40. Further, Plaintiff alleges that she informed her colleague, Defendant Lieutenant Quick, that Plaintiff was coming to the central precinct to check on her husband's welfare, but rather than intercede to assist, Lieutenant Quick informed Detective Santos that Plaintiff was on her way to the precinct. TAC ¶ 58 n.3.

Additionally, Plaintiff alleges that after arriving at the central precinct, the front desk clerk provided Plaintiff with a visitor badge and "waived her through." TAC ¶ 41. Plaintiff then proceeded to the detective division on the thirteenth floor with the intention of speaking to

[5] To the extent Plaintiff's claims are based on testimony given by Detectives Santos and Hertzler to the grand jury, the Court agrees with and adopts the portion of the F&R concluding that these Defendants are immune from claims based on such statements. Plaintiff, however, also alleges that these Defendants provided false documentation to the prosecutor, which is actionable.

Detective Santos to check on her husband. *Id*. When Plaintiff arrived on the thirteenth floor, "the receptionist, on her own accord, again waived her through into the Detective Division's office area where she requested to speak with Detective Santos." TAC ¶ 42. Plaintiff, after realizing it was best to "follow official protocol," returned to the first floor to wait to speak to Detective Santos. *Id*. When Detective Santos arrived on the first floor to speak with Plaintiff, he threatened Plaintiff that if she persisted in withholding information, her employment with PPB would be terminated and she would be criminally charged. TAC ¶¶ 43-44. Additionally, Plaintiff alleges that Detective Hertzler—among other Defendants—was "well apprised of [Plaintiff's] exculpatory intention" in accessing the thirteenth floor. TAC ¶ 60.

Accepting as true all well-pleaded material facts, construing those facts in the light most favorable to Plaintiff, and drawing all reasonable inferences from the factual allegations in her favor, the Court finds that Plaintiff plausibly has alleged sufficient facts showing that Detectives Santos and Hertzler fabricated evidence with respect to her official misconduct charge to overcome the prima facie finding of probable cause. As noted, "simple" allegations that a defendant lacked probable cause and knew the falsity of the crime charged, *Drake*, 215 Or. at 295-96, and provided false information to the prosecutor, *see Awabdy*, 368 F.3d at 1067, is sufficient to overcome the prima facie presumption.

Here, however, Plaintiff also alleges additional facts. She has pleaded facts showing (1) she had a lawful intention to visit the precinct (to check on her husband) and not to interfere with the investigation; (2) she used a visitors pass, not her own credentials, and checked in with the desk clerks to access the thirteenth floor; (3) she spoke with Detective Santos and was truthful; and (4) Detectives Santos and Hertzler were well-apprised of her actions and motives on

that day.[6] TAC ¶¶ 44, 58-60. These allegations further support that she sufficiently has rebutted the presumption of probable cause.

Plaintiff's allegations overcome the presumption of probable cause with respect to Detectives Santos and Hertzler and Plaintiff's official misconduct charge. Thus, the Court declines to adopt the F&R's analysis on this issue. Because Judge Armistead did not consider whether Plaintiff sufficiently alleged the other elements of a malicious prosecution claim, the Court remands for further proceedings on Plaintiff's malicious prosecution claim against these Defendants based on the official misconduct charge.

## B. Deliberate Fabrication of Evidence Claims under the Fourteenth Amendment

### 1. Legal Standard for Fabrication of Evidence under the Fourteenth Amendment

"[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc). The deliberate fabrication of evidence implicates "the fundamental due process right to a fair trial." *Richards v. County of San Bernadino*, 39 F.4th 562, 572 (9th Cir. 2022). This is true "regardless of the plaintiff's innocence or guilt . . . [as] the right to a fair trial is impinged either way." *Id*. at 573.

In *Devereaux*, the Ninth Circuit stated that to establish deliberate fabrication of evidence, a plaintiff

> must, *at a minimum*, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [the plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that

[6] It also is a reasonable inference at this stage of the litigation that Plaintiff's visitor badge would have been visible to Detective Santos.

> they knew or should have known that those techniques would yield false information.

263 F.3d at 1076 (emphasis in original). Stated another way, "[t]o prevail on a §1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).

"The key is that the plaintiff must make some showing of 'dishonesty' through either direct or circumstantial evidence." *Ciria*, 178 F.4th at 507 (quoting *Devereaux*, 263 F.3d at 1076). "The *Devereaux* test envisions an investigator whose unlawful motivation is illustrated by her state of mind regarding the alleged perpetrator's innocence, or one who surreptitiously fabricates evidence by using coercive investigative methods. These are circumstantial methods of proving deliberate falsification." *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010).

To establish the second element of causation, the plaintiff must show "that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." *Spencer*, 857 F.3d at 798. Additionally, causation can be shown under the "materiality causation standard," under which causation is established if the plaintiff "can show a reasonable likelihood that the allegedly fabricated . . . evidence could have affected the judgment of the jury." *Richards*, 39 F.4th at 573-74; *Caldwell v. City & Cnty. of San Francisco*, 889 F.3d 1105, 1115 (9th Cir. 2018) ("a §1983 plaintiff need not be convicted on the basis of the fabricated evidence to have suffered a deprivation of liberty—being criminally charged is enough").

**2. Analysis**

Plaintiff objects that the Magistrate Judge erred in finding that Plaintiff failed to plead sufficient facts to state a facially plausible claim for relief regarding deliberate fabrication of evidence allegations against Detectives Santos, Hertzler, and Samora.[7] In addition to the allegations of fabricated evidence set forth above, Plaintiff also sets forth allegations of fabricated evidence regarding exculpatory lab reports.

Plaintiff alleges that between May 2021 and February 2022, before Plaintiff's indictment was issued, results from a DNA laboratory analysis came back negative for any indication that Plaintiff had tampered with evidence. TAC ¶ 55. The laboratory results reflected DNA from Plaintiff's husband and the deceased. *Id.* at 56. The results, however, contained no evidence of the application of soap, solvent, or bleach. *Id*. The application of soap, solvent, or bleach was the underpinning of a theory that Detectives Santos, Hertzler, and Samora relied upon for probable cause to support the charges of tampering with evidence and hindering prosecution. *Id*.

Plaintiff further alleges that Detectives Santos, Hertzler, and Samora disregarded and withheld the exculpatory laboratory reports and provided false and misleading evidence to the prosecuting attorney. TAC ¶ 96, 103. Based on this false evidence, Plaintiff allegedly was indicted on three counts of hindering prosecution, one count of tampering with evidence, and one count of official misconduct, and spent a "substantial number of hours" in jail after turning herself in. TAC ¶¶ 50-51, 102.

Considering the standards applicable on a motion to dismiss, Plaintiff plausibly alleges deliberate fabrication regarding the exculpatory lab reports with respect to Detectives Santos,

[7] Plaintiff does not object to the findings and recommendation's analysis on this claim with respect to Defendants Lovell, Frome, Quick, Jensen, Lindsey, and Baer.

Hertzler, and Samora. As Plaintiff alleges, these Defendants continued to investigate Plaintiff and provided false information that supported the charges of hindering prosecution and tampering with evidence when, based on the exculpatory lab evidence, at a minimum, these Defendants should have known that there was no evidence of tampering. This also shows dishonesty in Defendants' acts.

Additionally, Plaintiff has plausibly alleged that Detectives Santos and Hertzler deliberately fabricated evidence regarding Plaintiff's presence on the thirteenth floor of the precinct. These Defendants knew or should have known of Plaintiff's innocent intentions behind her presence at the PPB precinct and that she did not engage in the alleged misconduct to reach the thirteenth floor. Thus, the Court declines to adopt the Findings and Recommendation regarding Plaintiff's deliberate fabrication of evidence claims as to Detectives Santos, Hertzler, and Samora.

**C. Portions Without Objection**

Plaintiff only objects to portions of the F&R. Defendants did not object to any portion of the F&R. Thus, no party objected to a significant portion of the F&R. For these portions, the Court follows the recommendation of the Advisory Committee and reviews them for clear error on the face of the record. No such error is apparent. The Court adopts all portions of the Findings and Recommendation to which no party objected.

## CONCLUSION

The Court ADOPTS IN PART the Findings and Recommendation, ECF 83. The Court DECLINES TO ADOPT the Findings and Recommendation as to Plaintiff's malicious prosecution claims against Defendants Santos and Hertzler and deliberate fabrication claims against Defendants Santos, Hertzler, and Samora. The Court ADOPTS the Findings and Recommendation in all other respects. The Court remands to the Magistrate Judge to consider, in

the first instance, whether Plaintiff sufficiently alleged all elements of her malicious prosecution claim based on the official misconduct charge against Defendants Santos and Hertzler.

**IT IS SO ORDERED.**

DATED this 16th day of October, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge